The case we're going to hear is United States v. Gibson, and Mr. Brignac, we'll hear from you. Thank you, Judge Niemeyer, Eric Brignac, for the appellants. District courts have to impose reasonable sentences. And while district courts have great discretion in choosing what sentence to fashion and how to fashion that sentence, that discretion has a limit. And that limit is at the point of a 30-year sentence recommended by the guidelines, agreed to by the parties, for three defendants, all of whom... That's a little bit of an overstatement. The limit is the statutory limit, right? Well, Your Honor, the limit for reasonableness would not necessarily be the statutory limit. The statutory limit for a 90-year... The limit for reasonableness is not the guideline sentence either. No. One above the guidelines can be reasonable too, right? Of course, Your Honor. So I'm just challenging the fact you just said the limit of a reasonable sentence is 30 years. Yes, and perhaps I'm saying we're approaching the limit. And of course, each case is specific to the facts of the case. And in this case, for these defendants, a 30-year sentence was sufficient to provide adequate incapacitation to provide adequate deterrence. It's a very long sentence, and it was the appropriate sentence, substantively, for these robberies in which there was no discharge of the firearm, no serious injury. The district court had an obligation, as we're talking about what exactly is reasonable. The district court was impressed and expressed his impression that this conduct involved not only two robberies, but, for instance, in the case of Mr. Gibson, eight others. And in each case, the innocent people were terrorized. The Bojangles, people weren't even going to the establishment anymore because it was being robbed so much. And this was a much more violent circumstance than the 30 years would indicate, which is the mandatory minimum. It was also, Your Honor, the guidelines recommendation. The guidelines says the mandatory minimum is the sentence, but the judge took all that into account. And the question is, when he took all that into account and explained what he was doing, where was his reasoning unreasonable? His reasoning was unreasonable because he had an obligation to consider all of the 3553A factors. And what he did was focus merely on one aspect of one of those factors, the nature and circumstances of the offense. Which, by the way, I agree, Your Honor, that we can consider the universe of the relevant conduct, the universe of all the robberies. But even then, the district court still focused on only the most horrific aspects of those robberies. With respect to Trevon, if you considered them all and sentenced them for all, he'd have over 200 years, wouldn't he? And the guidelines, which you concede is reasonable. Well, the guidelines are presumptively reasonable, but again, this court, in choosing, in deciding what sentences are reasonable, rarely looks to, or in my experience, never looks to necessarily dismiss counts. The prosecution, as is its way, will charge everything. And it didn't take it into full account. I mean, if it took it into full account, it could have really done quite a bit more. But with respect to Trevon Gibson, it was also the fact that he was still serving his sentence from a prior crime. And he was operating his operations out of the halfway house in that prior crime. And he got, Your Honor, two years addition for the violation of supervised release that that amounted to. He probably deserved it, but that doesn't mean it can't be taken into account on this. It can be taken into account, but the ultimate sentence still needs to be substantively reasonable. But that's about as bad as it gets, isn't it? As far as somebody's likelihood of reoffending, that they're committing violent crimes involving brandishing firearms and holding people at gunpoint while they're in a halfway house serving a prior sentence, you know, other than shooting the people, what could be worse? Well, Your Honor, the fact that over the string of these robberies the firearms were not discharged demonstrates that as horrific as this behavior is, 30 years is a horrifically long sentence. So they hold a firearm in a man's face and tells him, open the safe or whatever this is. He didn't shoot because the person's accommodated. But don't you think that's a lasting terror effect on that person, the injury to that person's psyche and all the other people in the stores? Your Honor, and that's why the guideline, as is pointed out in the joint appendix in the PSRs for both Trevin and Michael Gibson, the Hobbs Act robbery guideline in this case, which again, they pled guilty to the 924Cs. But that Hobbs Act robbery guideline takes into account how much was stolen, whether the firearm was right. Your argument is it was unreasonable because although he did all this under the conditions we talked about, he should get a break because he didn't actually shoot anybody? That's your argument, that it's unreasonable because he could have been much worse than he was? He could have shot somebody in this series of robberies? That's the argument? Your Honor, in every case— I'm just asking, is that your argument? Yes. The reasonableness of a sentence depends in part on the reasonableness— Right. Could he have gotten more time than he got under this sentencing? Under the— Could he have gotten more time? Not under 3553A. Under the statutory maximum, he could have gotten life. All three defendants could have gotten life. But the point, Your Honor, is certainly the seriousness of the conduct, which must be measured against— I understand you have to look at it. But the context you want us to look at is he got a sentence, but it was too much. And one of the factors, one of the major factors you just argued is he didn't actually shoot anybody. Held a gun. Basically, I think he actually—they actually kidnapped some folks at one point by moving them one place or the other. Forced them at gunpoint to do things. But the sentence is unreasonable because he didn't actually shoot anybody? That's the first time I've heard that argument. I mean, I'm not saying you can't make it. Well, and the reason we're making arguments, the reason we're actually talking about discharging a firearm, putting a bullet into someone else, is because we're starting this argument up here in the exosphere. We're starting it at 30 years. Yet, Your Honor, if this had been a case where, say, they had pled guilty to the Hobbs Act and the guideline recommendation had been under 100 months, which it would have been on the Hobbs Act, then certainly talking about that extreme behavior, whether he shot someone or not, may be a bit beyond the pale. But we're already beyond the pale when we're talking about taking a 21-year-old— But he didn't get close to what he could have gotten under guideline calculations, did he? Under all the counts he was charged with, his plea saved him a bunch of time compared and contrasted with had he gone to trial and been convicted. Isn't that correct? A bunch of time. Yes, Your Honor. And that, obviously, I don't want the lead buried there, had he gone to trial and been convicted. Right. This would not have been an easy case for the government to try. You know, this is not a simple drug or gun possession. But the guidelines that you take into account dismiss counts, correct? The 5K2.21 does say that. Right. Although, again, 3553A is always going to trump any specific guideline recommendation. And the ultimate in sentence imposed must be reasonable. And, you know, it's worth noting, again, that this only comes up because we're starting at such a high point. Also, looking at some of this court's precedent, looking at some of the precedent the district court cited— How do we know it's unreasonable? Just because of the number? What's your standard to make it unreasonable? The number is just too much? For substantive unreasonable, let's look at some comparisons. Let me ask you, is it that the number is just too high and that the number itself makes it unreasonable? In the context of other numbers, yes, Your Honor. It has to be because substantive unreasonable— Other numbers in other cases or other numbers in this case? Well, other numbers, again, if we look at the Howard case— You have to answer the question. Other numbers— Your argument is— I'm a— Let me ask you. I want to understand your argument. The argument is you think these defendants got too much time contrasted with some folks in other cases? Yes. To use those as an example, you know, in the Howard case, this court gave examples. It was not actually—Howard was a life sentence, but gave examples of the de facto career offender, people who this court and the district court agreed really did live the life of crime the district court thought these individuals lived. And, you know, those sentences, 360 months, 262 months, 210 months, those were sentences that were appealed to this court as too high. In Sutton, a case cited by the district court, you know, there were— That's a hard argument to make. I mean, you have to look at the total circumstances of a case in order to reach a sentence. And in order for you to find some comparator, you're going to have to find a case where somebody terrorized two shops at gunpoint and had done eight others that were dismissed by the government over a period of time, terrorizing the people in those cases, and had done it while they were on a sentence from a prior conviction, basically leaving no gap of participation in society without criminal conduct. Now find that case and show the Senate that's what you have to show as a comparator. You can't just say, okay, another case under this. We have two crimes he pled guilty to, right, in these cases. Yes, and, Your Honor, to the extent that is the standard, I cannot do that because, you know— And I also would say that's too high of a burden to put on either party to have to find cases exactly on all fours. Well, then we have to argue, did the judge function unreasonably in the context of what he's working with? That is the facts of the case, the guidelines, and the statute. And in that thing, in that circumstance, it looks to me like it's within the statutory range. The judge explained why he was going up. The judge explained how serious the crimes were. And the question is, was the judge off deep end? And that's really—it's an abuse of discretion at this point, isn't it? It's an abuse of discretion. I will only say, Your Honor, that in terms of, you know, the question isn't just, was this crime horrific? Yes, it was. The question wasn't just, was there some basis for an upward variance or departure? The question is, is the sentence imposed in the context of 3553A, the marginal value of deterrence and incapacitation lessens as we start from a higher and higher baseline? The idea that people looking at this case— You couldn't have gotten any lower than 30. That was the minimum. Yes, Your Honor. Now, that happens to be the guideline range, what the guidelines said. But the statutory maximum is life. Yes. And the guidelines, if you apply them to all—for Trevin, all 10 robberies would have been over 200 years. He got 45 years. Yes. Well, Your Honor, I obviously appreciate that observation. If I may pivot just briefly to finish my argument, the Sean Sproul himself raised not just the substantive reasonableness argument, but in lieu of that, raised the procedural reasonableness argument. And— Let me ask you about Mr. Sproul. Yes, sir. Didn't the court note that at sentencing he was smirking and showed no sorrow or remorse at all? Do I have the right to defend him? Isn't that Mr. Sproul? That is Mr. Sproul. Why—let me ask you this much. Wouldn't the court have been within its discretion to— Did he get acceptance of responsibility in his calculations? Or did it matter since it went to the mandatory? And actually, yeah, Your Honor, I think it fleshed out. As a technical matter, it would be irrelevant. Because it struck me that probably the court could have taken away acceptance of responsibility. Do you think the court would have abused its discretion had it taken away acceptance of responsibility? Would the court have abused its discretion? With the caveat that it's a hypothetical and he would have had the 30-year guideline either way. If this— Let me say this. Yes, Your Honor. Taking away— Wait, wait. You have to stop when I'm talking. I am sorry, sir. I know it's a hypothetical. I asked you. I know what it is. I'm asking for your answer to that hypothetical. Had he taken away acceptance, I believe that would have been within his discretion. Okay. All right. Thank you. So where he abused his discretion and where he produced a procedurally unreasonable sentence was to take the six pages of sentencing argument that his attorney made, Joint Appendix 290 to 296, and to respond to that twice. I have considered all the arguments your lawyer has made. That was on Joint Appendix 297. And I have listened to your lawyer suggest you should get the mandatory minimum. That was at 299. Certainly, the district court did not have to go chapter and verse and respond point by point to six pages of sentencing argument. But, you know, to answer your question from the previous case, Judge Shedd, you know, if the judge says, I've considered the record, isn't that enough? Do you presume he's not telling the truth? No. He was telling the truth. But the vast majority of cases appeal to this court. The district court is not lying, and the district court is not acting with malice. In the cases where this court's reversed, it's because the district court has made a good-faith, honest mistake. So he made a good-faith, honest mistake in saying he read the entire record? No, Your Honor. He said, I've considered the arguments your lawyer has made, but we have no way of knowing whether he actually did that. What does he have to do, list it out chapter and verse? You know, and the test, again, you say what is the test? And if he did, let me ask you this question. Yes, sir. And if he did, and in those six pages you raised 15 arguments and he responded to 14, what do you think the likely argument would be? He didn't respond to number 15. He didn't take into account everything we said. Isn't that the logical outgrowth of what your argument is? Yes. That's what would be argued next. Your Honor, he said he took into account everything we said, and we think he was honest to some extent, and he addressed 14, but the 15th one he did not address, and therefore his answer is not complete. Since he didn't address it, it was an abuse of discretion. Isn't that where that argument is going to take us next? If the 15th argument was a critical argument, yes. If the 15th argument was a stock. Would you make an argument in court that you didn't think was a critical argument to your client? Would you? This court. Would you? Yes, depending. You would make an argument that's not critical? If my client. Would you make an argument that's not relevant to the court in sentencing? You would do that? Your Honor, the vast majority of arguments we would make at the district court would be relevant. I would only say that sometimes you make an argument because your client wants you to make an argument because it's not a frivolous argument to make, but it may or may not be your most important argument. I didn't ask most important. You changed it to most important. I said relevant or critical in your view. Yes. We would not make an argument to the district court as an officer of the court that was not relevant. You know what? I didn't think that you would. We would not. Thank you, Your Honor. All right. Ms. Watford-McKinney. Good morning. May it please the court, my name is Yvonne Watford-McKinney. I represent the United States. Your Honor, this case, as the court has already observed, was a very violent case. Multiple robberies were committed in this case. Mr. Spruill committed ten robberies. Ten Hobbs Act robberies and attempted to commit an eleventh one. Mr. Gibson wasn't even with Mr. Spruill when he committed the first robbery. Mr. Gibson was with Mr. Spruill only for six of those robberies. This court found that Mr. Spruill's conduct was abhorrent. It was horrible. It said he committed the robberies for greed. It rejected defense counsel's arguments that Mr. Spruill was a nice young man, a thoughtful young man. He said none of the victims in this case would consider that Mr. Spruill was as his counsel described him. The floor in this case was 30 years. But Congress did not enact 924C with a mandatory five year for the first conviction and a mandatory 25 years for the second because it felt that all defendants needed to be considered the same. If that was the case, there would not be a 5K 2.21. The district court considered every one of these robberies because of the violence, because of the terror that was inflicted upon the victims. And it was its discretion to do so. And it did so. And because of that, it considered upward departures in this case. For Mr. Spruill, who had no prior record, the court considered the fact that he had no prior record because he only upwardly departed by three years in this case. For the second defendant, he considered his prior record and he upwardly departed by only six years in this case. For Mr. Treven Gibson, who committed two of the robberies, two of ten robberies, while he was on or in BOP custody, he went up the highest. But it's because the court determined based on his conduct and all of the 3553 factors. When you appear in front of Judge Dever, do you find him to be someone who has read the record, who knows the law, and can walk through the case pretty thoroughly? Absolutely. And, as a matter of fact, in this case, he said, I read every word of the PSR from Mr. Gibson. And he indicated that he read the full record and considered everything in this case. And he always does. And, in fact, he's known for doing that. So if he says he's considered the record, he has considered the record. This court can take confidence in the fact that he has done that. And he did it in this case. So you appear in front of him, do you? I have appeared in front of him. So you expect when you go in there, you need to know the record and the law because he'll challenge you on it? Because he will challenge you. And he expects you to know the law up to the minute, as he does. Since he is, by reviewing his record, it appears to me he is a judge who does just that. That's what I take from looking at this case and others. And it seems to me we're really just getting into an area, and I understand why people appeal, because he gives pretty tough sentences. That is correct. But he bases them on what he thinks. And so it really becomes an argument in large measure of wanting us to substitute our judgment for him. But we don't substitute our judgment for, in the case of abuse of discretion, for any judge in this circuit, do we? That's correct, Your Honor. That is correct. If there are no questions for me. All right, thank you. Thank you, sir. Thank you, Your Honor. Just one point in rebuttal regarding, again, maybe what to do in terms of the procedural reasonableness. And this court has asked in the previous case what sort of a test. You know, I would propose sort of a text replacement test. In this case, there were six pages of sentencing argument. If you can take, in this or any case, the district court's response, and say that response would make sense if we replaced the defense or the prosecution lawyer's argument with any random text, recitation of the Declaration of Independence, going through the dictionary. You know, if that argument could be replaced, then the district court response could be the same. I've considered the arguments your lawyer has made. I've listened to your lawyer suggest you should get the mandatory minimum. You know, but that's totally unfair. I mean, the judges are discharging their duty. They're basically telling you, I've looked at everything you've said. I've read all the arguments. I've considered the whole record. There's no evidence that the judge is considering the Declaration of Independence or the Constitution text or something at that point. The judge is saying, I read this record. And the judge explained pretty clearly he was outraged by the expanse and violence of these crimes and that these people were charged only for two crimes when they had committed many more. And the differential between the defendants he explained also. I mean, their past record and with respect to Trevin, the fact that he didn't even give the system a space. I mean, he started committing crimes again while he was still in the halfway house for a prior crime. And it seems to me he explained all this. He exercised discretion. It's hard to say that was an abuse unless we want to substitute our judgment for the district court. And that's not the role of the Courts of Appeal. Courts of Appeal look for error, abuses of discretion, and order redos if there's evidence of wrongdoing by the judge in the case. What we're really asking is where's the evidence that the judge did not consider these things, where the judge did not take it all into account and act conscientiously. And you're suggesting that the fact that he said he was acting conscientiously is something we shouldn't take into account because that term is so broad it could include reading the Declaration of Independence. And I don't think that argument carries any water. Well, again, I believe there needs to be enough on his record to allow this court to have confidence he considered the argument. He explained pretty clearly why he was doing it. He went through a lot what impressed him and what moved him to do this sentence. And the question we have to ask now, was he off base in enhancing the sentences for the reasons he gave? And that's what I think the argument ought to be focusing on. And just to be clear, Your Honor, there's no argument of procedural unreasonableness in terms of the explanation he provided. Our procedural reasonableness argument is only focused on what he did not say regarding to Mr. Spruill's argument. Would your test rather be, when you say you did it all, we don't really believe you prove it to us? Isn't that what your test really is? When you say you did it, when you say you lived up to your duty and all the indications in the record, as Judge Niemeyer indicated, would support that, we don't give you that presumption. When you say it, you're a district court judge, but you better prove it to us. That is really what your test is, isn't it? Your Honor, it has to be. Because in order to provide a record for this court and to protect the public… It has to be under your approach. It doesn't have to be under the current law. You know, may I answer, Your Honor? Your Honor, the current law says there needs to be enough of a record for this court to be confident that the district judge listened to the arguments. And if that's there, then this court must affirm. We contend it's not. Thank you. Okay, thank you. We'll come down and recounsel.
judges: Paul V. Niemeyer, Dennis W. Shedd, Barbara Milano Keenan